**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOHN GORDON JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 23-300-MU |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff John Gordon Jones brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 6 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case…order the entry of a final judgment, and conduct all post-judgment proceedings."); s*ee also* Doc. 7). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and oral argument presented at the January 23, 2024, hearing before the undersigned

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this action.

Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I.  PROCEDURAL HISTORY

Jones applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on June 9, 2021, alleging disability beginning on December 25, 2018. (Doc. 8, PageID.230-231). His application was denied at the initial level of administrative review on March 9, 2022, and upon reconsideration on July 19, 2022. (Doc. 8, PageID.112, 123). Jones requested a hearing by an Administrative Law Judge ("ALJ"), and Jones appeared at a hearing before the ALJ on December 7, 2022. (Doc. 8, PageID.85-111). On April 21, 2023, the ALJ issued an unfavorable decision finding that Jones was not under a disability during the applicable time period. (Doc. 8, PageID.29-59). Jones appealed the ALJ's decision to the Appeals Council, and, on July 23, 2023, the Appeals Council denied his request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Doc. 8, PageID.23-28).

After exhausting his administrative remedies, Jones sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed the social security transcript on October 6, 2023. (Doc. 8). Both parties filed briefs setting forth their respective positions. (Docs. 9, 12). Oral argument was held before the undersigned Magistrate Judge on January 23, 2024. (Doc. 13).

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 6. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## II.  CLAIMS ON APPEAL

Jones alleges that the ALJ committed reversible error in violation of Social Security Regulations 20 C.F.R. §416.945, 20 C.F.R. §404.1545, and Social Security Ruling 96-8p in that the Administrative Law Judge's residual functional capacity ("RFC") determination at the fifth step[3] of the sequential evaluation process was not supported by substantial evidence. (Doc. 9, PageID.1807).

## III. BACKGROUND FACTS

Jones was born on August 26, 1976, and was forty-two years old on his alleged onset date and forty-four years old on the date he was last insured for DIB.  (Doc. 8, PageID.252).  He has a 12th grade education and past work experience as an avionics technician and a pest control technician. (Doc. 8, PageID.257).  Plaintiff's last date of work was in 2002. (*Id.*, PageID.89).  Jones alleged that he is unable to work due to lung mass, COPD, PTSD, TBI, mood disorder, migraines, treatment resistant depression, nightmares, sleep apnea, and numbness and pain in left extremities. (Doc. 8, PageID.256).

## IV. ALJ'S DECISION

The ALJ considered all the evidence of record and evaluated Plaintiff's claim in accordance with the five-step sequential evaluation process set forth in the regulations. (Doc.8, PageID.33-54). The ALJ determined Jones last met the insured status requirements of the Act on June 30, 2021 ("date last insured"). (Doc. 8, PageID.34). At step one of the sequential disability evaluation, the ALJ found Jones had not engaged in

---

[3] In response, the Commissioner notes that "the RFC determination is not the fifth step of the sequential evaluation process, so the Commissioner has left out that part of his phrasing." (Doc. 12, PageID.1818, n.3).

substantial gainful activity from his alleged onset date through his date last insured. (Doc. 8, PageID.34). At step two, the ALJ found that through his date last insured, Plaintiff had the following severe impairments: emphysema, chronic obstructive pulmonary disease, migraines, sequelae from a traumatic brain injury, mood disorder, post-traumatic stress disorder, arthritis, tinnitus, anxiety, and alcohol use disorder. (Doc. 8, PageID.34). At step three, the ALJ determined, through the date last insured, Jones did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8, PageID.35-40).

Before proceeding to step four, the ALJ assessed Plaintiff's RFC through the date last insured. (Doc. 8, PageID.40-53). She found Jones could perform a restricted range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the ALJ found:

> [T]he claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk 6 hours and sit for 6 hours with customary breaks. The claimant cannot perform any driving, cannot work at unprotected heights, and cannot operate heavy, moving equipment. The claimant can occasionally operate handheld vibrating equipment. The claimant can frequently push/pull with the dominant left upper extremity and left lower extremity. The claimant can occasionally perform overhead work. The claimant can never kneel, crawl, or climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, occasionally balance, and frequently stoop and crouch. The claimant can tolerate no exposure to caustic chemical fumes, gases, or industrial dust. The claimant can tolerate no concentrated exposure to extreme temperatures and cannot tolerate a concentrated steamy environment, i.e., in high humidity. However, she [sic] could tolerate customary atmospheric humidity. The claimant cannot tolerate noise above a very loud level 4. The claimant is limited to simple, routine tasks with reasoning, language, and mathematics levels no higher than 3. The claimant can tolerate occasional changes in a work setting or duties. The claimant cannot interact with the public in person. The claimant should not be required to coordinate with coworkers on team tasks, meaning the worker and the coworkers would have their hands on the same project at the same time.

(Doc. 8, PageID.40-41). At step four, the ALJ found Jones had no past relevant work. (Doc. 8, PageID.53). At step five, relying on testimony from a vocational expert, the ALJ found that through the date last insured, given Plaintiff's RFC and vocational profile, there were jobs existing in significant numbers in the national economy that he could perform, such as a marker (Dictionary of Occupational Titles (DOT) No. 209.587-034), a router (DOT No. 222.587 038), and a page (DOT No. 249.687-014). (Doc. 8, PageID.54, 106). Based on this analysis, the ALJ found Jones was not disabled within the meaning of the Act from the alleged onset date of December 25, 2018, through the date last insured of June 30, 2021. (Doc. 8, PageID.54-55).

## V. STANDARD OF REVIEW

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)€. "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in

determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if

[the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. DISCUSSION

As set forth above, Jones claims that the ALJ erred in making an RFC determination that is not supported by substantial evidence and thereby concluding that Jones can perform jobs existing in significant numbers in the national economy. Specifically, Jones alleges that the ALJ erred in not including the use of a cane in the RFC. (Doc. 9, PageID.1809).  Jones further alleges that that the ALJ's limitation of jobs "which require no higher than reasoning, math, and language level 3" is inconsistent with the ALJ's limitation stating that Jones can only perform "simple" jobs. (Doc 9, PageID.1810).  The Court will address Plaintiff's contentions in the order presented.

## A.  Failure to include the use of a cane in the RFC

In his written submission and at oral argument, Jones alleges that the ALJ erred in not including the use of a cane in the RFC. Jones states that the ALJ disregarded his need to use a cane to ambulate because he did not apply for a parking permit until 2023 and further notes that the cane was prescribed by his treating physician. (Doc. 9, PageID.1809). Therefore, Jones contends that the ALJ's RFC, which does not include the use of a cane, was not based on substantial evidence. The Commissioner, on the other hand, asserts that the ALJ properly considered all the relevant evidence in assessing Plaintiff's RFC, including his testimony, treatment history, objective medical records, consultative examinations, medical opinions, and prior administrative medical findings by the State agency medical and psychological consultants; consequently, the

RFC is supported by substantial evidence and the conclusion that Jones was not disabled was not in error. (Doc. 12, PageID.1823).

The basic question presented by Jones is whether the ALJ's assessment of his medical condition in formulating his RFC was based on substantial evidence. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. *Id.* at *3.

It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. See 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec.*

*Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, CA 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

Jones specifically claims that the ALJ did not account for his need to use a cane to ambulate in the assigned RFC. (Doc. 9, PageID.1809). At the hearing conducted by the ALJ on December 7, 2022, Jones testified that he had used a cane[4] "[o]ff and on for about two years" and explained that the cane was prescribed by his doctor and provided by the VA. (Doc. 8, PageID.97). Jones further stated regarding the doctor's prescription for the cane: "at the time, I didn't think I needed it so I told him no but then a couple months later, I realized that I did so I called and asked him about it so they gave me one." (*Id.*). In her decision, the ALJ referred to Plaintiff's testimony that he had used a cane to ambulate at times over the past two or three years. (Doc. 8, PageID.41).

The ALJ states that, in making the RFC finding, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (*Id.*). The ALJ then concluded that Plaintiff's "statements

---

[4] The hearing transcript appears to contain typographical errors in which the word "pain" is used instead of the word "cane" in the discussion between the ALJ and Jones regarding his use of a cane. (*See* Doc. 8, PageID.97).

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 8, PageID.42).  Next, the ALJ undertakes a detailed summary of Plaintiff's treatment and medical records from the relevant period (*See* Doc. 8, PageID.42-46) and concludes that the evidence "supports the determination that the claimant could perform a range of light work during the relevant period."  (Doc. 8, PageID.46).  The ALJ bases this determination on her finding that "[w]hile the claimant reports the use of a cane to ambulate, he does not use his cane constantly, and many records note that he is capable of ambulating normally without this assistive device. Therefore, there is no evidence that he requires a cane to perform work-related activity." (Doc. 8, PageID.46). A review of the medical records indicates that, during the relevant time, Jones presented to various medical providers without a cane and was found to have a normal gait. (Doc. 8, PageID.541, 661, 663, 743, 792-93, 854, 856, 867, 938, 1019-20, 1032, 1036, 1048, 1165-66, 1281-82, 1359, 1406-07, 1465, 1467, 1477, 1668-69, 1680, 1684, 1696).

The ALJ then discusses the weight accorded to the various medical opinions and findings she reviewed. (*See* Doc. 8, PageID.49-52). She specifically addresses the opinion provided by one of Plaintiff's treatment providers, Kathryn Giardina, ACNP-BC, FNPBC, which was provided on January 6, 2023, as part of Plaintiff's application for a vehicle disability placard. The application states that Jones has a permanent disability and "[c]annot walk two hundred feet without stopping to rest."  (Doc. 8, PageID.1791). Notably, however, the limitation "[c]annot walk without the use of, or assistance from, a brace, cane, crutch, another person, prosthetic device, wheelchair, or other assistive device" was not checked by Giardina when she completed the form.  (*Id.*). In any event,

the ALJ states that Giardina's opinion is not persuasive, as it "was rendered well after the date last insured, is unsupported by objective evidence, and is inconsistent with the records from the relevant period." (Doc. 8, PageID.51).   Accordingly, the ALJ clearly explained why this information in the 2023 parking permit application was not factored into her RFC analysis.

Next, the ALJ discusses in depth the findings and opinion of the consultative examiner, Claire K. Carney, Ph.D., and why she found her opinion partially persuasive. (*See* Doc. 8, PageID.51-52).   The ALJ notes Carney's opinion that Jones did not require the use of a cane for ambulation and responded to the ensuing objections from Jones's representative as follows:

> Upon consideration of the representative's objections and evaluation of the evidence as a whole, the undersigned only finds the opinion of Dr. Carney to be partially persuasive. Dr. Carney's opinion is supported by her objective examination, which was performed well after the date last insured. However, her determination that the claimant would be capable of lifting and carrying 20 pounds occasionally is consistent with the normal strength and normal findings in the extremities during the relevant period. (Exhibit B1F; B2F; B4F; B6F). However, there is not sufficient evidence to support such significant standing and walking restrictions. Though the use of an assistive device was noted during the examination, the claimant himself reports that he does not consistently require this assistive device, and his gait was steady without an assistive device during the objective examination. (Exhibit B11F). While the treatment records sometimes note the use of an assistive device, on other occasions the claimant's gait is normal and he is described as ambulatory with no mention of an assistive device. (Exhibit B4F; B6F). Therefore, the determination that the claimant does not require an assistive device for ambulation is consistent with ambulation, despite the statements made by the claimant's representative.

(Doc. 8, PageID.52). Notably, the ALJ finds Carney's opinion only partially persuasive because the ALJ actually finds that Carney's limitations on standing and walking are *too* restrictive. (*Id*.).   Ultimately, after considering the evidence, including Plaintiff's testimony

11

concerning his use of a cane, the ALJ issued an RFC limiting Jones to light work with additional limitations.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and having considered the arguments made by Jones, the Court finds that, even though there may be some contrary evidence concerning his use of and the medical necessity for a cane, the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## B.  Inconsistency in the RFC's limitations

Jones also asserts that the ALJ's limitation of jobs "which require no higher than reasoning, math, and language level 3" is inconsistent with the ALJ's limitation stating that he is "limited to simple, routine tasks." (Doc. 9, PageID.1810; Doc. 8, PageID.1787). However, Jones does not dispute that the three jobs identified by the vocational expert and set forth at step five in the ALJ's decision – marker, router, and page – all have reasoning, math, and language levels below level 3. (Doc. 9, PageID.1810; *see* U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed., rev., 1991) (DOT) No. 209.587-034, 1991 WL 671802 (position of marker requires a reasoning level of 2, a math level of 1, and a language level of 1); DOT No. 222.587-038, 1991 WL 672123 (position of router requires a reasoning level of 2, a math level of 1, and a language level of 2); DOT No. 249.687-014, 1991 WL 672351 (position of page has reasoning level of 2, a math level of

1, and a language level of 2)).  The three jobs identified all have a reasoning level of 2, which requires the ability to carry out "detailed but uninvolved written or oral instructions." (Doc. 9, PageID.1809).

Plaintiff's argument regarding any inconsistency by the ALJ fails because the Eleventh Circuit has held that "[t]here is no apparent conflict between a limitation to simple, routine, repetitive tasks and a requirement to carry out detailed but uninvolved instructions." *Matos v. Commissioner of Social Security,* No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022).  Likewise, the Court found no conflict between an RFC that limits the claimant to jobs involving the ability to "understand, carry out, and remember simple instructions" and to "make simple work-related decisions" and the ALJ's reliance on testimony that identified positions for the plaintiff with a reasoning level of 2. *Buckwalter v. Acting Commissioner of Social Security,* 5 F.4th 1315, 1323-24 (11th Cir. 2021). Based upon these authorities, this Court concludes that the jobs identified by the vocational expert requiring a reasoning level of 2 are consistent with the ALJ's limitation to simple, routine tasks. To the extent that there is any inconsistency with the ALJ's finding that Jones can perform jobs up to a reasoning, math, and language level 3 and the limitation to simple tasks, such inconsistency amounts to harmless error because the three jobs identified by the vocational expert are all within levels to which Jones is capable of performing. Therefore, Jones cannot prevail on this argument.

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of

Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **15th** day of **May, 2024**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**